UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Civil Action No. 08-1288

---

In Regard to the Matter of:

Bayside State Prison Litigation

OPINION/REPORT OF THE SPECIAL MASTER

KENNETH WEST

-vs-

WILLIAM H. FAUVER, et al,

Defendants.

---

*   *   *   *

THURSDAY, OCTOBER 1, 2009

*   *   *   *

BEFORE THE HONORABLE JOHN W. BISSELL, SPECIAL MASTER

Transcript of proceedings in the above matter taken by Theresa O. Mastroianni, Certified Court Reporter, license number 30X100085700, and Notary Public of the State of New Jersey at the United States District Court House, One Gerry Plaza, Camden, New Jersey, 08102, commencing at 11:36 AM.

MASTROIANNI & FORMAROLI, INC.
Certified Court Reporting & Videoconferencing
251 South White Horse Pike
Audubon, New Jersey 08106
856-546-1100

A P P E A R A N C E S:

JAIME KAIGH, ESQUIRE
32 NORTH BLACK HORSE PIKE
BLACKWOOD, NEW JERSEY 08012
856-232-3337
856-232-4561
ATTORNEYS FOR THE PLAINTIFFS

ROSELLI, GRIEGEL, LOZIER & LAZZARO, PC
BY: MARK ROSELLI, ESQUIRE
- and -
BY: KENNETH W. LOZIER ESQUIRE
1337 STATE HIGHWAY 33
HAMILTON SQUARE, NEW JERSEY 08690
609-586-2257
ATTORNEYS FOR THE DEFENDANTS

JUDGE BISSELL: We are reopening proceedings in the matter of Kenneth West, docket number 08-1288 and the following will constitute the Special Master's determination regarding his complaint.

This opinion/report is being issued pursuant to the directives of the Order of Reference to a Special Master and the Special Master's Agreement and the guiding principles of law which underlie this decision to be applied to the facts upon which it is based as set forth in the jury instructions in the Walker and Mejias jury charges to the extent applicable to the allegations of Mr. West.

As finalized after review under Local Civil Rule 52.1, the transcript of this oral opinion will constitute the written report required by paragraph seven of the Order of Reference to a Special Master.

Mr. West was housed in F Unit at the time of an incident or one might call a progressive series of incidents thereafter occurring on the 25th of August, 1997 toward the end of the lockdown period.

The triggering incident in the dayroom of F Unit at that time I find is most accurately and

credibly described by the testimony of then Corrections Officer Recruit Shirley Tozer, T-O-Z-E-R, now Shirley Royal, when she testified on March 10th, 2009. The excerpt involved here appears between pages 196 and 200 of the transcript generated at that hearing on that date.

The questioning begins on this subject:

"Question: Sitting here in this courtroom, do you recognize Inmate Kenneth West?

"Answer: Yes.

"Question: Do you remember what the charge was that you wrote against Inmate Kenneth West and the circumstances surrounding it?

"Answer: .402, being in an unauthorized area.

"Question: Can you tell us why you wrote that charge?

"Answer: The facility had imposed a red line system, put red tape in many, many places and the inmates were not supposed to cross over those red lines, or even actually step on them.

"Question: Was that system implemented after the death of Fred Baker?

"Answer: Yes.

"Question: And do you know what the

purpose of that was, why they implemented that system?

"Answer: Officer safety, I would imagine.

"Question: Was it to sort of give some distance?

"Answer: To keep you out of the space -- the direct space, you know.

"Question: Between an officer and an inmate?

"Answer: Yes.

"Question: Okay. Do you remember specifically when that red line system was put in place? Do you have a recollection?

"Answer: I can only say August.

"Question: Okay. Now, August 25th, 1997, you told us you were working second shift in F Unit; is that correct?

"Answer: Yes.

"Question: And did there come a time when there was an incident with Inmate West that led to a charge?

"Answer: Yes.

"Question: Can you tell us what you recall?

"Answer: The inmate approached the area, came across the red line, and when he was told that he couldn't get on to the red line, he was agitated by that and walked away, and called me an asshole.

"Question: Do you remember why he entered the area?

"Answer: He, according to what I recall, he was bringing mail, maybe to be mailed. I don't think he was picking up mail. He was bringing mail to be mailed out.

"Question: And you were there at the desk or the podium?

"Answer: Yes.

"Question: And was it a podium, was it a desk, how would you describe the setup?

"Answer: Podium, tall, like a work -- a gray metal -- I don't know what they really are technically called, but we called them a podium.

"Question: And was there a chair for you to sit at?

"Answer: Yeah, there is usually a stool, couple chairs, plastic chair, maybe.

"Question: But this podium would be higher than a normal table or desk?

Answer: Oh, yes. If I'm standing at the podium at my height, my eyes would just come across the top of it.

"Question: And then the chair would really be a stool of some type?

"Answer: Yes.

"Question: Now, do you recall actually seeing Inmate West enter the area and cross the red line?

"Answer: Yes.

"Question: Okay. And what did you do when you saw that?

"Answer: I told him he was on the red line, and that's obviously restricted area, unauthorized area for any convict to be in.

"Question: And you told him that because that's what the rule was, that he was not supposed to be in that area, correct?

"Answer: Yes.

"Question: And then his response, I think you said he sort of became agitated in some type?

"Answer: Yes.

"Question: In some fashion? And can you tell us more of what you recall?

"Answer: He called me an asshole, and walked to the phones and proceeded to attempt to make a phone call.

"Question: Okay. Now, when you first told him that he had crossed the line, at that point, was it your intention to issue a disciplinary of any type?

"Answer: No. Not at all.

"Question: After he called you an asshole, did you then decide that you were going to write a disciplinary for him coming across the red line?

"Answer: Because of his attitude and agitation, not necessarily referring to me or anybody as an asshole."

That's a description of the events at that time. Ms. Tozer further testified, and once again I believe accurately, that Mr. West was asked to go to his bunk to get his ID which he did and return to the area. And at this time two officers essentially on a roving patrol, Officers Koerner and Fronczek were there, they cuffed Mr. West and held him in the day room without any particular incident waiting for an escort unit to arrive to take him to lockup.

That escort unit did arrive, it was a Bayside Prisoner Response Team, not a SOG team, although they were geared up, it appears. That response team consisted of Officers David Vastano, V-A-S-T-A-N-O, Ronald Callahan, William Nessen, N-E-S-S-E-N, Arwin Dusenko, D-U-S-E-N-K-O, and William Ruff, and their supervisor, Sergeant Donald Zawojski.

At this point the evidence somewhat diverges in connection with what occurred when the response team endeavored to secure Mr. West for a transport to B Unit lockup.

The events in question eventually led to an Internal Affairs investigation and a significant point or possible event in that investigation focused around whether or not the inmate, Mr. West, kicked one of the officers in the prison response team, namely Officer Ruff.

A number of statements were taken, most of them introduced into evidence, either with separate exhibit numbers or as a part of P-172 which is the full administrative investigation report from Internal Affairs of this incident.

Reports from Mr. Koerner with regard to when Mr. West allegedly kicked Mr. Ruff included a

statement that it occurred when they were exiting F Unit, and another one when the response team escorted him.

A report of Sergeant Zawojski, by implication at least, indicated that the kick actually happened in F Unit. And another report of his says: "As we began to remove Inmate West from the corner of F Unit, he kicked Officer Ruff in the knee".

Officer Ruff, in one of his reports, indicated that he was kicked in the right leg from behind. Once again, with an inference that it occurred in F Unit itself in the immediate vicinity of their exiting the premises.

Officer Nessen said this occurred as we started to escort Mr. West. Officer Vastano, interestingly enough in his report appearing at Bates stamp page number 5902 in P-172, did not mention that the kicking occurred.

Another officer's report appearing at 5903 says, while we were escorting the inmate to lockup. Mr. Callahan indicated it was while we were attempting to take control of the inmate for transport to lockup. Endeavoring to read these reports and make a determination at least as to what

the response team's position was leads me to draw the inference, I think appropriately so, that according to them, this incident occurred, and the kicking actually did, in fact, take place while they were in F Unit, albeit at the point of exiting.

Ms. Tozer, however, in the day room, in the immediate vicinity of this event, whose decision it was to write a charge (even though it may not yet have been written), and in a position definitely to observe what was taking place in that immediate area, makes no mention whatsoever of Inmate West kicking Mr. Ruff or any other officer. Her statement, I think marked into evidence independently as Exhibit D-620, but nevertheless also appearing as a part of P-172 beginning at Bates stamp page 5894, after her discussion of the preliminary events continues on page 5895: "At this time I saw the response team enter the unit and escort Inmate West out of the unit, down the steps and onto the grassy area in the direction of A/B Unit. I then returned to my normal duties."

So it's clear from that statement relatively contemporaneous, September 11th, 1997, that she did observe this segment at least of Mr. West's custody by the response team. She continues

in that statement and I continue this quote: "At no time did I witness any unusual incidents. There was at no time any assaults by compound patrol or the response team toward this inmate nor did I witness the assault of any officer from the response team or compound patrol by this inmate."

Now, in the course of her testimony here in court Ms. Tozer, one might say, somewhat compromised that statement and in some instances indicated that she may not have been watching these events surrounding Mr. West quite as completely as she was, ostensibly due to other duties. I'm not exactly sure why this approach took place. Ms. Tozer has been retired from Bureau of Prisons employment for some time. Perhaps it's the product of her realizing that her written statement contradicted those of others. But in any event, certainly I find it more credible that her statement at the time, when not a part of this response team and with no need, if you will, to get the story straight, stated very clearly that at the same point in time when the other members of the response team are alleging that Mr. West kicked Mr. Ruff, she saw no such thing.

And so I reach the determination here that that didn't happen, that he did not kick Mr.

Ruff.

I find further that there were, indeed, injuries inflicted by the response team upon Mr. West as reflected in P-171 which are the photographs, albeit by photocopy, and also as discussed and described at some length in the Internal Affairs investigation report.

I don't think it's necessary to reiterate those at length, that report is in evidence and can be consulted for that purpose.

These injuries happily were relatively minor injuries, cuts and bruises sustained due to the employment of excessive and, frankly, unnecessary force in the course of his transport to the lockup unit.

Upon arrival at the lockup unit I find, as Mr. West testified, that his shoulder, which was indeed injured as the pictures and analysis reflect, was slammed into the door of the unit in order to open it. This, once again, is consistent with a rough and unnecessary and excessive use of force in the course of the transport of this plaintiff.

I find that the reports and testimony of the response team members that the plaintiff was combative in the course of his transport is not

credible and like the fabricated kicking incident, was employed here as a shield, so to speak, for their own misconduct and use of excessive force in the transport.

However, I find, as reflected in the photographs taken on the 27th of August, some two days later, that the injuries depicted in those photographs, including those to plaintiff's shoulder resulting from the use of it to open the door into the unit, are the injuries which, in fact, occurred. I do not find it credible as described by Mr. West that other events transpiring supposedly on that day (such as his head being slammed into the B Unit podium) and later, upon his imminent departure to Trenton State Prison, in fact, occurred. I find this, frankly, is an effort to gild the lily and enhance his claims in this matter against the facility and its officers.

I do not find that these efforts, under any legal or equitable doctrine, bar his recovery for the injuries which he did, in fact, sustain. But I do not find them credible to support the allegations, among other things, that his head was slammed into the podium and/or that he was otherwise mistreated in the moments and minutes subsequent to his arrival at

the facility.

He was, of course, seen by medical personnel as best my recollection recalls, both on the 25th in the evening itself and later on the 27th with reports of the injuries actually sustained and not those which he has fabricated.

With regard to specifically his alleged assault by officers on the eve of his relocation to Trenton State Prison, those are not substantiated and, frankly, make no sense. Here is a man already marked to some extent and with reports to that effect. And for the officers at this point to reassault him with the potential of leaving additional evidence of assaults and injuries, which would have to be revealed and reviewed in either an exit medical exam from Bayside State Prison or an intake medical exam at Trenton State Prison or both, makes no sense and would indicate the willingness of these custodial officers, now about to be rid of a particular inmate, to run a substantial risk to their own careers. And once again, I see no grounds for it and it makes no inherent sense either. There is no reason to take this risk as a matter of logic. And with the claims of these injuries otherwise unsubstantiated, I find that they have not been

proven here.

There were also indications from the record that, upon his arrival at Trenton State Prison, now out of the clutches, if you will, of Bayside and its officers, he sought no follow-up medical treatment. One would have expected such a request had he been beaten only hours before.

As far as the scope and extent of his injuries are concerned, Mr. West did have lingering shoulder pain over time, although it has lessened by now. It did restrict his weight-lifting activities, but there was no significant permanency from any of these injuries and, in fact, when being admitted to Southwoods State Prison slightly less than a year later, on or about the 18th of June of 1998, he made no complaints of any lingering injuries afflicting him at that time.

There was, therefore, to the extent described and found above indeed excessive, unnecessary and sadistic force employed upon Mr. West within the comtemplation of those legal principles. However, in light of the fact that the injuries and hence this punishment inflicted upon him in the course of his transit to the lockup unit was not prolonged, repeated or resulting in extremely severe

injuries, I find, therefore, that while this is actionable for the recovery of compensatory damages, I do not find that this assault visited upon him rose to the level of being so egregious as to support a claim for punitive damages, at least against the identified officers here; once again, as the punitive damages standard is applied in the jury instructions mentioned above and incorporated here by reference.

I realize, of course, that there may come a time when an issue arises as to whether there is any significance of this conduct with regard to the establishment of supervisory liability and/or punitive damages in that respect. However, that awaits another day. And I will impose no punitive damages here.

Finally, although not every item of evidence has been discussed in this opinion/report, all evidence presented to the Special Master was reviewed and considered.

This is a case (unlike most) where we do, indeed, have identifiable defendants, namely the members of the Bayside State Prison Response Team. I might add that I find no basis for any liability against either the podium officer identified previously or the two initial responders who placed

this man in handcuffs. The injuries were inflicted by the response team. I find that the injury inflicted here was actionable. I find that although originally and initially acute, it has not remained significantly permanent with any major continuing pain or significant restriction on Mr. West's activities.

Accordingly, I recommend in this report that the district court enter an award of compensatory damages in the amount of $4,500 in Mr. West's favor and that that judgment may specifically be entered in this matter against the members of the response team, David Vastano, Ronald Callahan, William Nessen, Arwin Dusenko, William Ruff and Donald Zawojski to the extent that any of them are named defendants in this action. That frankly is something that's not at my fingertips, but if they are, then the case has been proven as to them.

(Hearing Adjourned)

C E R T I F I C A T E

I, Theresa O. Mastroianni, a Notary Public and Certified Shorthand Reporter of the State of New Jersey, do hereby certify that the foregoing is a true and accurate transcript of the testimony as taken stenographically by and before me at the time, place, and on the date hereinbefore set forth.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the action.

Theresa O. Mastroianni
Theresa O. Mastroianni, C.S.R.
Notary Public, State of New Jersey
My Commission Expires May 5, 2010
Certificate No. XI0857
Date: October 1, 2009

**A**

**accurate** 20:6
**accurately** 4:25 9:18
**action** 1:2 19:16 20:11,14
**actionable** 18:2 19:3
**activities** 17:11 19:7
**acute** 19:4
**add** 18:23
**additional** 16:14
**Adjourned** 19:19
**administrative** 10:22
**admitted** 17:13
**Affairs** 10:14,23 14:6
**afflicting** 17:16
**agitated** 7:4 8:21
**agitation** 9:14
**Agreement** 4:9
**al** 1:9
**albeit** 12:5 14:5
**allegations** 4:13 15:22
**alleged** 16:7
**allegedly** 10:25
**alleging** 13:22
**amount** 19:10
**analysis** 14:18
**and/or** 15:24 18:12
**Answer** 5:10,14 5:18,24 6:3,7 6:11,15,19,23 7:1,8,14,17,22 8:1,6,10,13,19 8:23 9:1,8,13
**anybody** 9:14
**appearing** 11:17 11:20 12:14
**appears** 5:4 10:3
**applicable** 4:13
**applied** 4:10 18:7
**approach** 13:13
**approached** 7:1
**appropriately** 12:2
**area** 5:15 7:2,7 8:8,14,15,18 9:20 12:10,19
**arises** 18:10
**arrival** 14:16 15:25 17:3
**arrive** 9:24 10:1
**Arwin** 10:6 19:14
**asked** 9:18
**assault** 13:5 16:8 18:3
**assaults** 13:3 16:14
**asshole** 7:5 9:1 9:10,15
**attempt** 9:2
**attempting** 11:23
**attitude** 9:13
**attorney** 20:10 20:12
**ATTORNEYS** 3:6,12
**Audubon** 2:22
**August** 4:22 6:15,16 15:6
**awaits** 18:14
**award** 19:9
**A/B** 12:20

**B**

**B** 10:12 15:13
**Baker** 5:23
**bar** 15:20
**based** 4:11
**basis** 18:23
**Bates** 11:17 12:15
**Bayside** 1:5 10:2 16:16 17:5 18:22
**beaten** 17:7
**began** 11:7
**beginning** 12:15
**begins** 5:7
**believe** 9:18
**best** 16:3
**BISSELL** 1:21 4:1
**BLACK** 3:4
**BLACKWOOD** 3:5
**bringing** 7:9,10
**bruises** 14:12
**bunk** 9:19
**Bureau** 13:14

**C**

**C** 3:2 20:1,1
**call** 4:20 9:3
**Callahan** 10:5 11:22 19:13
**called** 7:4,19,19 9:1,9
**Camden** 2:10
**careers** 16:21
**case** 18:20 19:18
**certainly** 13:17
**Certificate** 20:21
**Certified** 2:6,20 20:4
**certify** 20:5,9
**chair** 7:20,23 8:4
**chairs** 7:23
**charge** 5:12,17 6:22 12:8
**charges** 4:12
**circumstances** 5:13
**Civil** 1:2 4:15
**claim** 18:5
**claims** 15:17 16:24
**clear** 12:22
**clearly** 13:21
**clutches** 17:4
**combative** 14:25
**come** 6:20 8:2 18:10
**coming** 9:11
**commencing** 2:10
**Commission** 20:20
**compensatory** 18:2 19:10
**complaint** 4:5
**complaints** 17:16
**completely** 13:11
**compound** 13:3 13:6
**compromised** 13:9
**comtemplation** 17:21
**concerned** 17:9
**conduct** 18:11
**connection** 10:10
**considered** 18:19
**consisted** 10:4
**consistent** 14:20
**constitute** 4:3,16
**consulted** 14:10
**contemporane...** 12:23
**continue** 13:1
**continues** 12:16 12:25
**continuing** 19:5
**contradicted** 13:16
**control** 11:23
**convict** 8:15
**corner** 11:8
**correct** 6:18 8:18
**Corrections** 5:2
**counsel** 20:10,12
**couple** 7:23
**course** 13:7 14:14,22,25 16:2 17:24 18:9
**court** 1:1 2:7,9 2:20 13:8 19:9
**courtroom** 5:9
**credible** 13:18 15:1,11,22
**credibly** 5:1
**cross** 5:20 8:8
**crossed** 9:5
**cuffed** 9:22
**custodial** 16:19
**custody** 12:25
**cuts** 14:12
**C.S.R** 20:19

**D**

**damages** 18:2,5 18:7,13,15 19:10
**date** 5:6 20:8,21
**David** 10:4 19:13
**day** 9:23 12:6 15:12 18:14
**dayroom** 4:24
**days** 15:7
**death** 5:23
**decide** 9:10
**decision** 4:10 12:7
**defendants** 1:10 3:12 18:21 19:16
**definitely** 12:9
**departure** 15:14
**depicted** 15:7
**describe** 7:16
**described** 5:1 14:6 15:11

17:19
**description** 9:16
**desk** 7:13,16,25
**determination** 4:4 11:25 13:24
**direct** 6:8
**direction** 12:20
**directives** 4:7
**disciplinary** 9:6 9:11
**discussed** 14:5 18:17
**discussion** 12:16
**distance** 6:6
**district** 1:1,2 2:9 19:9
**diverges** 10:10
**docket** 4:2
**doctrine** 15:20
**Donald** 10:7 19:15
**door** 14:19 15:9
**draw** 12:1
**due** 13:12 14:12
**Dusenko** 10:6 19:14
**duties** 12:21 13:12
**D-U-S-E-N-K-O** 10:6
**D-620** 12:14

**E**

**E** 3:2,2 20:1,1
**effect** 16:12
**effort** 15:16
**efforts** 15:19
**egregious** 18:4
**either** 10:20 16:15,22 18:24
**employed** 15:2 17:20
**employee** 20:10 20:12
**employment** 13:14 14:13
**endeavored** 10:11
**Endeavoring** 11:24
**enhance** 15:17
**enter** 8:8 12:18 19:9
**entered** 7:7 19:12
**equitable** 15:20
**escort** 9:24 10:1 11:16 12:18
**escorted** 11:2
**escorting** 11:21
**ESQUIRE** 3:4,9 3:10
**essentially** 9:21
**establishment** 18:12
**et** 1:9
**eve** 16:8
**evening** 16:4
**event** 10:15 12:7 13:17
**events** 9:16 10:13 12:16 13:11 15:12
**eventually** 10:13
**evidence** 10:9,20 12:13 14:9 16:14 18:17,18
**exactly** 13:13
**exam** 16:16,17
**excerpt** 5:4
**excessive** 14:13 14:21 15:3 17:19
**exhibit** 10:21 12:13
**exit** 16:16
**exiting** 11:1,14 12:5
**expected** 17:6
**Expires** 20:20
**extent** 4:13 16:11 17:8,18 19:15
**extremely** 17:25
**eyes** 8:2

**F**

**F** 4:19,25 6:17 11:1,6,8,13 12:5 20:1
**fabricated** 15:1 16:6
**facility** 5:18 15:18 16:1
**fact** 12:4 15:10 15:15,21 17:13 17:22
**facts** 4:10
**far** 17:8
**fashion** 8:24
**FAUVER** 1:9
**favor** 19:11
**finalized** 4:14
**Finally** 18:16
**financially** 20:13
**find** 4:25 13:17 14:2,16,23 15:5,11,15,19 15:22 16:25 18:1,3,23 19:2 19:3
**fingertips** 19:17
**first** 9:4
**focused** 10:16
**following** 4:3
**follow-up** 17:5
**force** 14:14,21 15:3 17:20
**foregoing** 20:5
**FORMAROLI** 2:19
**forth** 4:11 20:8
**found** 17:19
**frankly** 14:13 15:16 16:10 19:16
**Fred** 5:23
**Fronczek** 9:22
**full** 10:22
**further** 9:17 14:2 20:9

**G**

**geared** 10:3
**generated** 5:5
**Gerry** 2:9
**gild** 15:16
**give** 6:5
**go** 9:19
**going** 9:10
**grassy** 12:19
**gray** 7:18
**GRIEGEL** 3:9
**grounds** 16:21
**guiding** 4:9

**H**

**H** 1:9
**HAMILTON** 3:11
**handcuffs** 19:1
**happen** 13:25
**happened** 11:6
**happily** 14:11
**head** 15:13,23
**hearing** 5:6 19:19
**height** 8:2
**held** 9:22
**hereinbefore** 20:8
**higher** 7:25
**HIGHWAY** 3:11
**HONORABLE** 1:21
**Horse** 2:21 3:4
**hours** 17:7
**House** 2:9
**housed** 4:19

**I**

**ID** 9:19
**identifiable** 18:21
**identified** 18:6 18:24
**imagine** 6:4
**immediate** 11:13 12:7,10
**imminent** 15:14
**implemented** 5:22 6:1
**implication** 11:5
**impose** 18:14
**imposed** 5:18
**incident** 4:20,24 6:21 9:23 10:23 12:3 15:1
**incidents** 4:21 13:2
**included** 10:25
**including** 15:8
**incorporated** 18:8
**independently** 12:13
**indicate** 16:18
**indicated** 11:5 11:11,22 13:10
**indications** 17:2
**inference** 11:12 12:2
**inflicted** 14:3 17:23 19:1,3
**inherent** 16:22
**initial** 18:25
**initially** 19:4
**injured** 14:18
**injuries** 14:3,11 14:12 15:7,10 15:21 16:5,14 16:24 17:9,13 17:16,22 18:1 19:1
**injury** 19:2
**inmate** 5:9,12

6:10,21 7:1 8:8 10:17 11:7,21 11:23 12:11,18 13:4,6 16:20
**inmates** 5:20
**instances** 13:9
**instructions** 4:12 18:7
**intake** 16:17
**intention** 9:6
**interested** 20:13
**interestingly** 11:17
**Internal** 10:14 10:23 14:6
**introduced** 10:20
**investigation** 10:14,16,22 14:7
**involved** 5:4
**issue** 9:6 18:10
**issued** 4:6
**item** 18:16

J

**JAIME** 3:4
**Jersey** 1:2 2:8,10 2:22 3:5,11 20:5,20
**JOHN** 1:21
**JUDGE** 4:1
**judgment** 19:11
**June** 17:15
**jury** 4:11,12 18:7

K

**KAIGH** 3:4
**keep** 6:7
**Kenneth** 1:7 3:10 4:2 5:9,12
**kick** 11:5 13:25
**kicked** 10:17,25 11:8,11 13:23
**kicking** 11:19
12:3,11 15:1
**knee** 11:9
**know** 5:25 6:8 7:18
**Koerner** 9:21 10:24

L

**law** 4:9
**LAZZARO** 3:9
**leads** 12:1
**leaving** 16:13
**led** 6:21 10:13
**leg** 11:11
**legal** 15:20 17:21
**length** 14:6,9
**lessened** 17:10
**level** 18:4
**liability** 18:12 18:23
**license** 2:7
**light** 17:22
**lily** 15:16
**line** 5:19 6:13 7:2,3 8:9,14 9:5,12
**lines** 5:21
**lingering** 17:9 17:16
**Litigation** 1:6
**Local** 4:14
**lockdown** 4:22
**lockup** 9:25 10:12 11:22,24 14:14,16 17:24
**logic** 16:23
**LOZIER** 3:9,10

M

**mail** 7:9,10,11
**mailed** 7:9,11
**major** 19:5
**man** 16:10 19:1
**March** 5:3
**MARK** 3:9
**marked** 12:13 16:11
**Master** 1:6,21 4:8,18 18:18
**Master's** 4:4,8
**Mastroianni** 2:6 2:19 20:3,19
**matter** 1:4 2:6 4:2 15:17 16:23 19:12
**medical** 16:2,16 16:17 17:6
**Mejias** 4:12
**members** 13:22 14:24 18:22 19:12
**mention** 11:18 12:11
**mentioned** 18:8
**metal** 7:18
**minor** 14:12
**minutes** 15:25
**misconduct** 15:3
**mistreated** 15:24
**moments** 15:25

N

**N** 3:2
**named** 19:16
**necessarily** 9:14
**necessary** 14:8
**need** 13:19
**neither** 20:9,11
**Nessen** 10:5 11:15 19:14
**nevertheless** 12:14
**New** 1:2 2:8,10 2:22 3:5,11 20:4,20
**normal** 7:25 12:20
**NORTH** 3:4
**Notary** 2:8 20:3 20:20
**number** 2:7 4:3 10:19 11:18
**numbers** 10:21
**N-E-S-S-E-N** 10:6

O

**O** 2:6 20:3,19
**observe** 12:10 12:24
**obviously** 8:14
**occurred** 10:10 11:1,13,15,19 12:3 15:10,15
**occurring** 4:21
**October** 1:15 20:21
**officer** 5:2 6:3,9 10:18 11:8,10 11:15,16 12:12 13:5 18:24
**officers** 9:20,21 10:4,17 15:18 16:8,12,19 17:5 18:6
**officer's** 11:20
**Oh** 8:1
**Okay** 6:12,16 8:11 9:4
**once** 9:17 11:12 14:20 16:21 18:6
**open** 14:20 15:9
**opinion** 4:15
**opinion/report** 1:5 4:6 18:17
**oral** 4:15
**order** 4:7,17 14:19
**originally** 19:4
**ostensibly** 13:12

P

**P** 3:2,2
**page** 11:18 12:15,17
**pages** 5:5
**pain** 17:10 19:6
**paragraph** 4:17
**part** 10:21 12:14 13:19
**particular** 9:23 16:20
**parties** 20:11
**patrol** 9:21 13:3 13:6
**PC** 3:9
**period** 4:23
**permanency** 17:12
**permanent** 19:5
**personnel** 16:3
**phone** 9:3
**phones** 9:2
**photocopy** 14:5
**photographs** 14:4 15:6,8
**picking** 7:10
**pictures** 14:18
**Pike** 2:21 3:4
**place** 6:14 12:4 12:10 13:13 20:8
**placed** 18:25
**places** 5:19
**plaintiff** 14:22 14:24
**PLAINTIFFS** 3:6
**plaintiff's** 15:8
**plastic** 7:23
**Plaza** 2:9
**podium** 7:13,15 7:17,19,24 8:2 15:14,24 18:24
**point** 9:5 10:9 10:15 12:5 13:21 16:12
**position** 12:1,9
**possible** 10:15
**potential** 16:13
**preliminary**

12:16
**premises** 11:14
**presented** 18:18
**previously** 18:25
**principles** 4:9 17:21
**prison** 1:5 10:18 15:15 16:9,16 16:17 17:4,14 18:22
**Prisoner** 10:2
**Prisons** 13:14
**proceeded** 9:2
**proceedings** 2:5 4:2
**product** 13:15
**progressive** 4:20
**prolonged** 17:25
**proven** 17:1 19:18
**Public** 2:8 20:3 20:20
**punishment** 17:23
**punitive** 18:5,6 18:13,14
**purpose** 6:1 14:10
**pursuant** 4:7
**put** 5:19 6:13
**P-171** 14:4
**P-172** 10:21 11:18 12:15

**Q**

**question** 5:8,11 5:16,22,25 6:5 6:9,12,16,20 6:24 7:6,12,15 7:20,24 8:4,7 8:11,16,20,24 9:4,9 10:13
**questioning** 5:7
**quite** 13:11
**quote** 13:1

**R**

**R** 3:2 20:1
**reach** 13:24
**read** 11:24
**realize** 18:9
**realizing** 13:16
**really** 7:18 8:5
**reason** 16:23
**reassault** 16:13
**recall** 6:25 7:9 8:7,25
**recalls** 16:3
**recognize** 5:9
**recollection** 6:14 16:3
**recommend** 19:8
**record** 17:3
**recovery** 15:20 18:2
**Recruit** 5:2
**red** 5:19,19,21 6:13 7:2,3 8:8 8:13 9:11
**reference** 4:7,17 18:8
**referring** 9:14
**reflect** 14:18
**reflected** 14:4 15:5
**regard** 1:4 10:24 16:7 18:11
**regarding** 4:4
**reiterate** 14:9
**relative** 20:10,12
**relatively** 12:23 14:11
**relocation** 16:8
**remained** 19:4
**remember** 5:11 6:12 7:6
**remove** 11:7
**reopening** 4:1
**repeated** 17:25
**report** 4:16 10:22 11:4,6 11:17,20 14:7 14:9 19:8
**Reporter** 2:7 20:4
**Reporting** 2:20
**reports** 10:24 11:10,25 14:23 16:5,11
**request** 17:7
**required** 4:16
**respect** 18:13
**responders** 18:25
**response** 8:20 10:2,4,11,18 11:2 12:1,17 12:25 13:4,5 13:19,22 14:3 14:24 18:22 19:2,13
**restrict** 17:11
**restricted** 8:14
**restriction** 19:6
**resulting** 15:9 17:25
**retired** 13:14
**return** 9:20
**returned** 12:20
**revealed** 16:15
**review** 4:14
**reviewed** 16:15 18:19
**rid** 16:19
**right** 11:11
**risk** 16:20,23
**Ronald** 10:5 19:13
**room** 9:23 12:6
**rose** 18:3
**ROSELLI** 3:9,9
**rough** 14:21
**roving** 9:21
**Royal** 5:3
**Ruff** 10:7,18,25 11:8,10 12:12 13:23 14:1 19:14
**rule** 4:15 8:17
**run** 16:20

**S**

**S** 3:2
**sadistic** 17:20
**safety** 6:3
**saw** 8:12 12:17 13:23
**says** 11:7,21
**scope** 17:8
**second** 6:17
**secure** 10:11
**see** 16:21
**seeing** 8:8
**seen** 16:2
**segment** 12:24
**sense** 16:10,18 16:22
**separate** 10:21
**September** 12:23
**Sergeant** 10:7 11:4
**series** 4:21
**set** 4:11 20:8
**setup** 7:16
**seven** 4:17
**severe** 17:25
**shield** 15:2
**shift** 6:17
**Shirley** 5:2,3
**Shorthand** 20:4
**shoulder** 14:17 15:8 17:10
**significance** 18:11
**significant** 10:15 17:12 19:6
**significantly** 19:5
**sit** 7:21
**Sitting** 5:8
**slammed** 14:19 15:13,23
**slightly** 17:14
**SOG** 10:2
**somewhat** 10:9 13:8
**sort** 6:5 8:21
**sought** 17:5
**South** 2:21
**Southwoods** 17:14
**space** 6:8,8
**speak** 15:2
**Special** 1:6,21 4:4,8,8,18 18:18
**specifically** 6:13 16:7 19:11
**SQUARE** 3:11
**stamp** 11:18 12:15
**standard** 18:7
**standing** 8:1
**started** 11:16
**State** 1:5 2:8 3:11 15:15 16:9,16,17 17:3,14 18:22 20:4,20
**stated** 13:20
**statement** 11:1 12:12,22 13:1 13:9,16,18
**statements** 10:19
**States** 1:1 2:9
**stenographica...** 20:7
**step** 5:21
**steps** 12:19
**stool** 7:23 8:5
**story** 13:20
**straight** 13:20
**subject** 5:7
**subsequent** 15:25
**substantial**

16:20
**substantiated** 16:9
**supervisor** 10:7
**supervisory** 18:12
**support** 15:22 18:4
**supposed** 5:20 8:18
**supposedly** 15:12
**sure** 13:13
**surrounding** 5:13 13:11
**sustain** 15:21
**sustained** 14:12 16:5
**system** 5:19,22 6:2,13

**T**

**T** 20:1,1
**table** 7:25
**take** 9:24 11:23 12:4 16:23
**taken** 2:6 10:19 15:6 20:7
**tall** 7:17
**tape** 5:19
**team** 10:2,2,4,11 10:18 11:2 12:17,25 13:4 13:5,19,22 14:3,24 18:22 19:2,13
**team's** 12:1
**technically** 7:19
**tell** 5:16 6:24 8:25
**testified** 5:3 9:17 14:17
**testimony** 5:1 13:7 14:23 20:6
**Theresa** 2:6 20:3
20:19
**thing** 13:23
**things** 15:23
**think** 7:10 8:21 12:2,13 14:8
**THURSDAY** 1:15
**time** 4:20,25 6:20 9:17,20 12:17 13:2,3 13:15,18,21 17:10,17 18:10 20:7
**told** 6:17 7:2 8:13,16 9:5
**top** 8:3
**Tozer** 5:2 9:17 12:6 13:8,13
**transcript** 2:5 4:15 5:5 20:6
**transit** 17:24
**transpiring** 15:12
**transport** 10:12 11:24 14:14,22 14:25 15:4
**treatment** 17:6
**Trenton** 15:15 16:9,17 17:3
**triggering** 4:24
**true** 20:6
**two** 9:20 15:7 18:25
**type** 8:5,22 9:7
**T-O-Z-E-R** 5:2

**U**

**unauthorized** 5:15 8:15
**underlie** 4:10
**unit** 4:19,25 6:18 9:24 10:1 10:12 11:2,6,8 11:13 12:5,18 12:19,20 14:15 14:16,19 15:10
15:13 17:24
**United** 1:1 2:9
**unnecessary** 14:13,21 17:20
**unsubstantiated** 16:25
**unusual** 13:2
**use** 14:21 15:3,9
**usually** 7:22

**V**

**Vastano** 10:4 11:16 19:13
**vicinity** 11:13 12:7
**Videoconfere...** 2:20
**visited** 18:3
**vs** 1:8
**V-A-S-T-A-N-O** 10:5

**W**

**W** 1:21 3:10
**waiting** 9:24
**walked** 7:4 9:2
**Walker** 4:12
**watching** 13:10
**weight-lifting** 17:11
**West** 1:7 4:2,13 4:19 5:9,12 6:21 8:8 9:18 9:22 10:11,17 10:25 11:7,16 12:11,18 13:11 13:23 14:3,17 15:11 17:9,20
**West's** 12:25 19:6,11
**whatsoever** 12:11
**White** 2:21
**William** 1:9 10:5 10:7 19:14,14
**willingness**
16:18
**witness** 13:2,4
**work** 7:17
**working** 6:17
**write** 9:11 12:8
**written** 4:16 12:9 13:16
**wrote** 5:12,17

**X**

**XIO857** 20:21

**Y**

**Yeah** 7:22
**year** 17:14

**Z**

**Zawojski** 10:8 11:4 19:15

**$**

**$4,500** 19:10

**0**

**08-1288** 1:2 4:3
**08012** 3:5
**08102** 2:10
**08106** 2:22
**08690** 3:11

**1**

**1** 1:15 20:21
**10th** 5:3
**11th** 12:23
**11:36** 2:10
**1337** 3:11
**18th** 17:15
**196** 5:5
**1997** 4:22 6:17 12:23
**1998** 17:15

**2**

**200** 5:5
**2009** 1:15 5:4 20:21
**2010** 20:20
**25th** 4:21 6:16 16:4
**251** 2:21
**27th** 15:6 16:4

**3**

**30X100085700** 2:7
**32** 3:4
**33** 3:11

**4**

**402** 5:14

**5**

**5** 20:20
**52.1** 4:15
**5894** 12:15
**5895** 12:17
**5902** 11:18
**5903** 11:21

**6**

**609-586-2257** 3:12

**8**

**856-232-3337** 3:5
**856-232-4561** 3:6
**856-546-1100** 2:23